Jeff STRACHAN and Annette Gaspard, Plaintiffs-Appellants,

v.

UNION OIL COMPANY, et al., Defendants-Appellees.

No. 84–2667
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1985.

29. *Id.* at 982.

30. *Id.* at 982 n. 2.

31. *Id.*

32. 461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

33. 722 F.2d 714 (11th Cir.1984).

M. Diane Dwight, Port Arthur, Tex., for plaintiffs-appellants.

W. Carl Jordan, Stuart B. Johnston, Jr., Houston, Tex., for defendants-appellees.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants, Jeff Strachan and Annette Gaspard, are both employees of appellee, Union Oil Company. In both instances they are represented in their employment relationship by the Oil, Chemical and Atomic Workers Union which has collective bargaining agreements with Union Oil. Strachan was suspected of drug use while on duty by the company. Gaspard was suspected of possible drug use or of mental problems. Both were suspended, medical tests and examinations were made which were negative, and they were restored to full duty. Both appellants then brought suit in state district court alleging various tort claims against the company for the actions which it had taken. The company removed the case to federal court and then moved for summary judgment. The district court granted summary judgment in both cases on the ground that the state tort claims were preempted by federal law.

Appellants clearly had the right under the collective bargaining contract to make grievance claims against the company for the actions taken against them, and both employees did file grievances. Strachan's grievance was withdrawn or settled by the union. He makes no claim of lack of fair representation by the union. *Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F.2d 167, 171 (5th Cir.1971). Gaspard's grievance still pends and apparently is awaiting arbitration.

The district court in a carefully analyzed opinion cites ample authority for the proposition that in general the kind of claims made by the appellants in this case are not subject to state tort claims because they are preempted by the collective bargaining contract concluded in accordance with the National Labor Relations Act, 29 U.S.C. § 151 et seq.

In simple terms each of these employees was suspected of violating the collective agreement in a way which would subject them to discipline by the company. Gaspard later was suspected instead of having mental difficulties. Both were suspended during the investigations. The investigations were negative, and they were exonerated and returned to full duty. This routine procedure occurs thousands of times every year under collective bargaining agreements throughout the United States. No matter in what glamorous garb it is dressed, the basic thrust of the appellants' claim is that a suspension and investigation for possible disciplinary action itself constitutes a tort under state law.

The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement. The United States Supreme Court stated the rule most clearly and succinctly in *Repub-*

*lic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965):

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it.... [I]t would deprive employer and union of the ability to establish a uniform and *exclusive* method for orderly settlement of employee grievances (emphasis added).

This rule has been stated in many cases. It was confirmed by the Supreme Court as recently as April 16, of this year in *Allis-Chalmers Corp. v. Lueck,* — U.S. —, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985), in which the Court said: "Congress intended § 301 (29 U.S.C. § 185) to pre-empt this kind of derivative tort claim ... [O]nly that result preserves the central role of arbitration in our 'system of industrial self-government.' *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)."

■ The district court found that this principle preempted all of the claims made by appellants under state law and rendered summary judgment for appellee accordingly. We are in full agreement with the decision of the district court. The issues concerning the medical examinations and involving the blood and urine tests are clearly within the power of the company under the collective bargaining agreement to insist upon medical examinations when there is doubt as to the physical condition of an employee at work.

The claim made by appellant Strachan that he was forced to allow his person, his automobile, and his locker to be searched also cannot properly be put at issue under a state tort claim. His obvious remedy under the contract to test the reasonableness of the company's action in his case was to refuse such searches if he desired to do so and then file a grievance if any disciplinary action was taken against him. These cases are grist for the mill of grievance procedures and arbitration. Further, the claim of appellant Gaspard that she was falsely arrested when she was asked to take a taxi to have a medical examination at the office of the company physician falls in the same category and borders on the frivolous.

These various claims by the appellants demonstrate clearly an attempt to create major state court claims out of matters which are all part of a company claim of right under a collective bargaining agreement, and the employee's right to challenge such claims through grievance procedure ending in binding arbitration. To hold otherwise in this case would subject thousands of grievance procedures involving disciplinary investigations and disciplinary actions including such matters as careless destruction of production, chronic tardiness, drinking on duty, insubordination, to lawsuits asserting state court claims. The conclusion that such claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 151 et seq. and particularly § 185, reveals the wisdom and necessity of the established legal principle. Otherwise, the critically important aspect of collective bargaining which is involved in the establishment of the grievance procedure to protest breaches of labor contracts would be destroyed.

The United States Supreme Court has summarized it well by calling the grievance-arbitration procedure:

> the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for *all* the problems which may arise and to provide for *all* their solutions in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content is given to the collective bargaining agreement....
> The grievance procedure is, in other words, a part of the continuous collective bargaining process. (Emphasis added.)

*United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Appellants also allege malice in the actions of the company officials. A careful review of appellant's depositions which were before the court reveals not the slightest hint of malice with respect to either appellant. In both instances, there were facts sufficient in the conduct of the appellants to raise at least a question in the minds of the company officials that their physical or mental condition ought to be checked out. When their condition was checked out in an expeditious fashion they were cleared and restored to full duty without loss of pay. Neither of them specifically objected to the medical examinations. Nor did Strachan object to the search of his locker and automobile. While he claims he felt he was acting under compulsion not to object, and Gaspard makes the same claim with respect to her medical examinations, it is clear that this concern was for their job tenure. This is a valid concern, but it can properly be tested under the grievance procedure. Either appellant, if wishing to challenge the justification for the company's actions, should have refused the examinations and searches, and then filed a grievance if any disciplinary action was taken against them.

Of course, they were concerned about their jobs. Any employee who is threatened with discipline or a possible physical condition that makes him or her unfit to continue in employment is concerned and feels a sense of coercion in the disciplinary procedure or the medical examinations. But there is no other alternative to a reasonable investigation by the company.

Finally, each appellant claims defamation because Strachan was charged with being a drug user or addict and Gaspard was charged with having mental problems. This Court has carefully reviewed their depositions and finds that no such charges were made. Instead, only questions were raised sufficient to justify the physical examination and searches which took place. To hold the company guilty of defamation for making such inquiries, even though they become known in the plant, would simply mean that the company could never undertake to investigate a possible discipli-

nary situation in routine and proper ways, or a possible situation involving physical or mental difficulties of an employee. There was not the slightest evidence in the depositions that the company in any way tried to cast the employees in an unfavorable light. Whatever references to possible drug use and possible mental condition which were made were made in the restricted personnel meetings in which the investigations were proposed and discussed. It would have been impossible for the company to have moved ahead without making such explanations.

Strachan was not actually charged with drug use or being a drug addict, he was simply told that the company had a possible suspicion of drug use. The suspicion arose out of an emergency situation in which the company felt that Strachan had overreacted in his responsibilities and, in the vernacular, had become "hyper" in his conduct. In the case of Gaspard, the company was concerned because Gaspard had suddenly raised and pursued some personality conflicts which had arisen between her and another employee some months back in a different job assignment. The employee with whom the personality conflicts had occurred was now working also in the same department with Gaspard, but had been for some time. Gaspard continued to discuss the earlier matters with her supervisor over several days in such a way that the supervisor became concerned. Finally an arguably strange note was sent by Gaspard to her supervisor which may or may not have been subject to reasonable explanation. Even defamation claims under state law have been preempted by the grievance-arbitration procedure unless malice is shown. *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). There is no malice shown in this record.

In sum, the company was acting on a non-malicious basis. Any mistakes or improprieties which it made were subject to the grievance procedure ending in binding arbitration under the collective bargaining agreement. There was simply no room for

any independent tort claim against the company for these work connected and collective bargaining connected actions by the company. Summary judgment as to both appellants in favor of Union Oil was proper.

AFFIRMED.